UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FIDEL HURTADO,

    Defendant.

Case No. 13-cr-00121-JST-3

**ORDER DENYING MOTION TO SUPPRESS**

Re: ECF No. 65, 98

## I.    INTRODUCTION

Criminal defendant Fidel Hurtado moves to suppress a statement given to an officer. Motions and Notice of Motion ("Motion") 11:10-17:7. The matter came for hearing on February 12, 2014.

## II.    BACKGROUND

### A.    Factual Background

Defendant Hurtado was arrested in Napa and taken to a police station for questioning in a room with two officers. One officer and Defendant engaged in an interaction in Spanish, translated and transcribed as follows:

> OFFICER: [F]irst off, you are under arrest for transportation and sales of drugs, okay? I'm going to read you your rights, okay? … [Bell rings] You have the right to say nothing. Okay, anything that you say can be used against you in a [sic] a court of law. Okay, you have the right to have an attorney present before and during any questions. If you cannot pay an attorney, one will be, be assigned to you for free to represent you. Okay? Do you understand your rights that I just explained to you? Yes or no.
>
> HURTADO: Yes.
>
> OFFICER: And, keeping in mind those rights, uh, do you wish to talk to me right now?

         HURTADO: M-hmm.[1]

Hurtado's response can clearly be heard to consist of two separate syllables, in which the pitch of the second syllable rises.

Immediately after Hurtado's response, the officer began asking him questions, which Hurtado answered.

### B.    Legal Standard

The government bears the burden of proving by a preponderance of the evidence that a criminal defendant knowingly, intelligently, and voluntarily waived his Miranda rights. Missouri v. Seibert, 542 U.S. 600, 608 n. 1 (2004). The Court must assess the voluntariness of an admission under the "'totality of all the circumstances—both the characteristics of the accused and the details of the interrogation.'" Mickey v. Ayers, 606 F.3d 1223, 1233 (9th Cir. 2010) (citing Dickerson v. United States, 530 U.S. 428, 434 (2000)). An involuntary confession violates the Due Process Clause of the United States Constitution and is inadmissible. See Colorado v. Connelly, 479 U.S. 157, 168 (1986). In determining whether a statement is "voluntarily made . . . the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." Oregon v. Elstad, 470 U.S. 298, 318 (1985).

## III.    ANALYSIS

Defendant makes two arguments for suppression of his statement.

### A.    Failure to Advise Defendant of his Right to Cut Off Questioning

Defendant argues that the interrogation failed to comply with Miranda, because "Officer Ortiz failed to inform Mr. Hurtado of his right to terminate questioning, or invoke any other of the

---

[1] The parties have stipulated to the accuracy of the audio-recording of this interview, and have further stipulated that the "transcript[] prepared" of the conversation is an accurate transcription and translation. ECF No. 107-1. The Court understands the parties to be referring to the transcript prepared by the United States, see ECF Nos. 76-2 & 99-2, and not to the transcript prepared by Defendant, ECF No. 65-3. Therefore, it is the United States' transcript that appears in this order. Defendant's translation differs slightly (Hurtado's response appears as "Mmhmm. [almost inaudible]"), but this distinction would not affect the Court's conclusion at Part III-B-2, *infra*, and in any case the Court has made its own factual finding from listening to the recording both in chambers and in open court at the hearing on Defendant's motion.

1    Miranda rights, at any time during the interrogation." Motion 16:4-6.  But Defendant
2    acknowledges that the Ninth Circuit has held that "a defendant need not be informed of a right to
3    stop questioning after it has begun." United States v. Lares-Valdez, 939 F.2d 688, 689 (9th Cir.
4    1991).  Defendant argues that Lares-Valdez was incorrectly decided (an assertion that does not
5    affect this Court's responsibilities), and also that its premise was undermined by the Ninth Circuit
6    sitting *en banc* a year later.   In that *en banc* opinion, the Ninth Circuit noted that "[t]he objective
7    of . . . [a Miranda] advisement is to ensure an accused is both aware of his substantive
8    Constitutional right to silence, as well as his continuous opportunity to exercise that right."
9    Cooper v. Dupnik, 963 F.2d 1220, 1239 (9th Cir. 1992).

First of all, in Chavez v. Martinez, a majority of Supreme Court justices (in separate opinions) cast significant doubt on the viability of this portion of Cooper, in which the Ninth Circuit applied Miranda's rule to a civil plaintiff's § 1983 suit rather than a motion to suppress in a criminal case.  538 U.S. 760, 772-73, 777-79 (2003); see also 1 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 3:25 (in Chavez, "a majority of the Supreme Court clearly rejected the" view that "Miranda violations are actionable under § 1983 even where the results are not used in any criminal proceeding").

Even if the snippet Defendant quotes survives Chavez, it is best read as dicta describing the general purposes of Miranda, rather than an overruling of Lares-Valdez.  That the interrogators in Cooper may have failed to advise Cooper of his right to cut off questioning was hardly the main reason the Ninth Circuit found that the interrogation violated Miranda.  The interrogators in Cooper "conspired not only to ignore Cooper's response to the advisement of rights pursuant to Miranda, but also to defy any assertion of the Constitution's Fifth Amendment substantive right to silence, and to grill Cooper until he confessed." 963 F.2d at 1242.  "Cooper's interrogators tried first to trick him into foregoing his right to silence by turning the Miranda advisement into a farce . . . [and] continuously badgered Cooper for four hours in an attempt to avulse a confession." Id. Cooper was not primarily, or even tangentially, about the officers' failure to advise a detainee of his right to cut off questioning, and cannot be read as an overruling of Lares-Valdez.

Lares-Valdez directly decided the question of whether the failure to advise a defendant of

3

1  his continuing right to cut off questioning requires the suppression of those statements, and it
2  remains the law of this circuit.

### B.     Requirement to Clarify Ambiguous Response

Defendant also argues that the statement should be suppressed because, after receiving Miranda warnings, he gave an ambiguous response when the officer asked him if he wanted to speak.

"Before a defendant's self-incriminating statements may be admitted into evidence, 'a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.'" United States v. Rodriguez, 518 F.3d 1072, 1076 (9th Cir. 2008) (quoting Miranda v. Arizona, 384 U.S. 436, 475 (1966)).

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." N. Carolina v. Butler, 441 U.S. 369, 373 (1979). "[A] waiver of Miranda rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) (quoting Butler, 441 U.S. at 373). Specifically, "a suspect may impliedly waive the rights by answering an officer's questions after receiving Miranda warnings." United States v. Rodriguez-Preciado, 399 F.3d 1118, 1127 amended, 416 F.3d 939 (9th Cir. 2005)

Notwithstanding this, "[p]rior to 1994, . . . [the Ninth] [C]ircuit, along with a number of other jurisdictions, adopted a broad 'clarification' rule: in the face of an ambiguous or equivocal assertion of Miranda rights, made at any time during interrogation, interrogating officers were required to clarify the statement before continuing with interrogation." Rodriguez, 518 F.3d at 1077 (citing Nelson v. McCarthy, 637 F.2d 1291, 1296 (9th Cir. 1981); United States v. Fouche, 776 F.2d 1398, 1405 (9th Cir.1985); United States v. Mendoza–Cecelia, 963 F.2d 1467, 1472 (11th Cir.1992); United States v. Cherry, 733 F.2d 1124, 1130 (5th Cir.1984)). In 1994, the Supreme Court partly abrogated the "clarification rule" insofar as it applied to an ambiguous invocation of a right to counsel after a valid waiver: "after a knowing and voluntary waiver of the

Miranda rights, law enforcement officers may continue questioning until and unless the suspect *clearly* requests an attorney." Davis v. United States, 512 U.S. 452, 461 (1994) (emphasis added).

In 2009, the Ninth Circuit confirmed that "the clarification rule . . . survives Davis v. United States, except in situations where the suspect under interrogation has already given an unequivocal and unambiguous waiver of his Miranda rights." Rodriguez, 518 F.3d at 1080-81. "Davis addressed what the suspect must do to restore his Miranda rights after having already knowingly and voluntarily waived them," but "[i]t did not address what the police must obtain, in the initial waiver context, to begin questioning." Id. at 1079. In Rodriguez, the police advised the defendant of his rights, asked him if he wished to speak to police, and received the response: "I'm good for tonight." The officer left the room, and a short time later, another officer arrived and begin asking the defendant questions, which the defendant answered. The Ninth Circuit held that "[b]ecause Rodriguez's statement in response to the Miranda warning was ambiguous, and because his interrogator failed to clarify Rodriguez's wishes with respect to his Miranda warnings, the district court erred in admitting his subsequent incriminating statements into evidence." Id. at 1081.

In 2010, the Supreme Court held that a defendant who had been Mirandized and subsequently sat in silence for three and a half hours had not invoked his right his right to silence, and that he subsequently waived his Miranda rights by answering an officer's question. Berghuis, 560 U.S. at 387. Although some language in Berghuis could be read very broadly to abrogate the "clarification rule," see, e.g., id. at 388-89 ("[i]n sum, a suspect who has received and understood the Miranda warnings, and has not invoked his Miranda rights, waives the right to remain silent by making an uncoerced statement to the police"), this Court concludes that the clarification rule survives Berghuis.[2] In Berghuis, the suspect made no ambiguous statement between being

---

[2] There is unciteable authority on the question, but none of it squarely on point. See People v. Scott, H033759, 2011 WL 766946 (Cal. Ct. App. Mar. 4, 2011), unpublished/noncitable (Mar. 4, 2011), review denied (June 15, 2011) ("In light of the United States Supreme Court's recent decision in Thompkins, it is unclear whether the holding of Rodriguez is correct"). The Ninth Circuit, sitting *en banc*, adopted a narrow view of Berghuis (namely, that it does not alter the standard for invoking the right to counsel pre-waiver), although its opinion was vacated after the Supreme Court granted *certiorari*. Sessoms v. Runnels, 691 F.3d 1054, 1061-62 (9th Cir. 2012) cert. granted, judgment

Mirandized and answering questions, and so the Supreme Court was not called upon to address the viability of the "clarification rule." While a court looks to the totality of the circumstances in determining the voluntariness of a waiver, the Ninth Circuit has drawn, and has yet to erase, one bright line among those circumstances: when a defendant makes an ambiguous, unclarified response to an officer asking if he wishes to speak to police, that compels a conclusion that there has been no waiver.

Hurtado's statement, however, is not ambiguous. While the meaning of the utterance "m-hmm" can sometimes vary depending on its tone, in this case it is clearly a statement of affirmation. The utterance is divided into two tones, the second one rising above the first, in a manner that indicates an affirmative response. It is likely that the utterance's tones and their meaning would have been heard and understood even more clearly by the interrogating officer sitting near Hurtado than by the Court in listening to the recording. After careful review of the record, the Court concludes that the United States has established by a preponderance of the evidence that Hurtado's utterance unambiguously communicated an affirmative response to the officer's question. Moreover, there is nothing in the utterance that is reasonably susceptible to the interpretation that it might be a refusal to talk, or that it might be an even equivocal invocation of the right to remain silent or the right to have an attorney present.

### 3. Other Factors

Hurtado clearly affirmed to the officer that he understood his rights. The only evidence Defendant has submitted tending to show that Hurtado did not understand the words the officer was saying is Hurtado's declaration that he had only a middle school education in Mexico and no schooling in the United States. Declaration of Fidel Hurtado, ECF No. 65-2. This does not establish that Hurtado failed to understand his rights. See, e.g., United States v. Bautista-Avila, 6 F.3d 1360, 1365-66 (9th Cir. 1993) (the facts that a defendant "had no prior experience with the United States judicial system, had only a sixth grade Mexican education, and had been a manual

---

vacated sub nom. Grounds v. Sessoms, ___ U.S. ___, 133 S. Ct. 2886 (U.S. 2013). This case is somewhat distinct from Sessoms as well, since it involves the standard for a waiver of a defendant's right to remain silent rather than invocation of the right to have an attorney present.

laborer all his life . . . do not vitiate his voluntary Miranda waiver, especially considering that he indicated that he understood his rights after they were explained to him," and even when expert testimony is offered that the defendant was almost incapable of understanding abstractions). The United States has established by a preponderance of the evidence that Hurtado understood his rights.

Hurtado then engaged in a "course of conduct indicating waiver," Berghuis, 560 U.S. at 384, namely that he "impliedly waive[d] . . . [his] rights by answering an officer's questions after receiving Miranda warnings." Rodriguez-Preciado, 399 F.3d at 1127. The Court finds that Hurtado defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

## IV. CONCLUSION

The officer was not obligated to inform Hurtado of his right to cut off questioning. The "clarification rule" does not apply here, since the utterance was an unambiguous affirmative statement. The United States has satisfied its burden of demonstrating that Hurtado waived his Miranda rights. The motion to suppress is DENIED.

**IT IS SO ORDERED.**

Dated: March 3, 2014

_____
JON S. TIGAR
United States District Judge